## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge William J. Martínez

Civil Action No. 12-cv-2074-WJM-CBS
Consolidated with:   13-cv-1308-WJM-CBS

IN RE DAVITA HEALTHCARE PARTNERS, INC. DERIVATIVE LITIGATION

---

## ORDER GRANTING FINAL APPROVAL OF DERIVATIVE LITIGATION SETTLEMENT AND GRANTING IN PART MOTION FOR ATTORNEYS' FEES

---

This matter is before the Court on Lead Plaintiff Haverhill Retirement System's

Unopposed Motion for Final Approval of Amended Settlement ("Motion").  (ECF No.

102.)  On October 23, 2014, the parties to the Action entered into a Stipulation and

Agreement of Settlement and moved for preliminary approval of that Settlement the

following day.  (ECF No. 95.)  On December 3, 2014, after reviewing the parties'

amended settlement and renewed motion (ECF No. 100), the Court preliminarily

approved the Amended Settlement.  (ECF No. 101.)  A fairness hearing was held on

May 1, 2015, at which the Court orally approved the settlement, and took under

advisement Lead Plaintiff's Unopposed Motion for Attorneys' Fees, Reimbursement of

Expenses, and Payment of an Incentive Award to Lead Plaintiff ("Fee Motion") (ECF

No. 103).  (*See* ECF No. 106.)  Having considered the arguments raised in the briefs

and at the hearing, and for the reasons set forth below, the Court grants Lead Plaintiff's

Unopposed Motion for Final Approval of Amended Settlement (ECF No. 102), and

grants in part Lead Plaintiff's Fee Motion (ECF No. 103).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of numerous state and federal investigations and *qui tam*

suits brought under the False Claims Act related to fraudulent Medicare billing and violations of federal anti-kickback laws.  A 2012 settlement of one *qui tam* suit caused DaVita to incur expenses totaling $86 million dollars, and a 2014 settlement with the Department of Justice required DaVita to pay $350 million to resolve the False Claims Act claims, as well as a civil forfeiture of $39 million.

On August 7, 2012, Plaintiff Courtney Clark filed this action on behalf of DaVita Healthcare Partners, Inc., against DaVita's Board of Directors for breach of fiduciary duty related to the Company's fraudulent billing and kickback practices.  (ECF No. 1.) Clark sought damages from the members of the Board based on their breach of fiduciary duties in an amount necessary to compensate DaVita for the harm caused by the breach, equitable relief, and attorneys' fees and costs for this litigation.  (*Id*.)  Clark was represented by attorneys from The Shuman Law Firm, Kessler Topaz Meltzer & Check, LLP, and the Paskowitz Law Firm PC.  (*Id*.)

On May 17, 2013, Haverhill Retirement System filed a similar suit on behalf of DaVita and its shareholders against DaVita's Board of Directors.  (Case No. 13-cv-1308, ECF No. 2.)  Haverhill was represented by attorneys from Scott & Scott, LLP, and Dyer & Berens, LLP.  (*Id*.)

Haverhill filed a Motion to Consolidate on June 6, 2013 (ECF No. 32), which was renewed on October 15, 2013 (ECF No. 52), asking the Court to consolidate the two shareholder derivative actions, and to appoint Haverhill as lead plaintiff and Scott & Scott as lead counsel, with Dyer & Berens as liaison counsel.  Clark filed a similar Motion to Consolidate on November 5, 2013, seeking consolidation of the cases and appointment of Clark as lead plaintiff and her counsel as lead counsel.  (ECF No. 55.)

2

DaVita agreed that consolidation was appropriate and took no position as to the Plaintiffs' attorney leadership structure.  (ECF Nos. 58 & 64.)  The individual Defendants filed no response to either consolidation motion.  On January 7, 2014, the Court consolidated the two cases, appointing Plaintiff Haverhill as Lead Plaintiff, and the law firm of Scott & Scott, LLP as lead counsel, with Dyer & Berens, LLP as local counsel.  (ECF No. 67.)

On February 21, 2014, the individual Defendants filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6); 23.1; and 41(b). (ECF No. 73.)  However, on August 27, 2014, while the Motion to Dismiss was still pending, the parties filed a Joint Notice of Settlement.  (ECF No. 93.)  Given the parties' settlement, the Court denied Defendants' Motion to Dismiss without prejudice to refiling if the settlement is not fully and finally approved.  (ECF No. 94.)

On October 24, 2014, Haverhill filed an Unopposed Motion for Preliminary Approval of Settlement.  (ECF No. 95.)  On December 3, 2014, the Court denied without prejudice the Motion for Preliminary Approval, finding its provisions for notice to the shareholders to be inadequate.  (ECF No. 99.)  Consequently, the parties amended their settlement agreement, and on December 12, 2014, Plaintiff filed an Unopposed Motion for Preliminary Approval of Amended Settlement.  (ECF No. 100.)  On January 8, 2015, the Court preliminarily approved the parties' amended settlement, directed that notice be provided to all shareholders, set a deadline for shareholders to object to the settlement, and set a final fairness hearing.  (ECF No. 101.)  On January 15, 2015, DaVita posted a Notice to Investors regarding the settlement to the Investor Relations page of its website, which remains active.  (ECF No. 104-1.)  On January 22, 2015,

3

DaVita filed a Form 8-K with the Securities and Exchange Commission, which included the Notice of Proposed Amended Settlement.  (ECF No. 104-2.)  On the same day, the Notice of Proposed Amended Settlement was published in *Investor's Business Daily*. (ECF No. 104-3.)  Also in January 2015, DaVita caused Notices of the Proposed Amended Settlement to be distributed to all stockholders by mail or e-mail, depending on the stockholder's prior election of communication method.  (ECF No. 104-4.)  A total of 94,210 Notices were distributed to DaVita stockholders.  (*Id.*)

The deadline for objecting to the proposed settlement was April 21, 2015.  (ECF No. 101.)  No objections, timely or otherwise, were filed with the Court or with either of the parties.  (ECF No. 105.)

On April 10, 2015, Plaintiff Haverhill filed its Unopposed Motion for Final Approval of Amended Settlement (ECF No. 102) and Unopposed Motion for Attorneys' Fees, Reimbursement of Expenses, and Payment of an Incentive Award to Lead Plaintiff (ECF No. 103).  The Court held a fairness hearing on May 1, 2015, during which the attorneys set forth their arguments as to why the Court should approve the settlement and the unopposed Fee Motion.  (ECF No. 106.)  No shareholder appeared at the hearing to object to the settlement.  (*Id.*)  The Court granted the Motion for Final Approval of Settlement and stated that it would issue this Order more fully setting forth its findings.  (*Id.*)  The Court took the Fee Motion under advisement, expressing concerns regarding counsel's hourly rates and the fee multiplier applied.  (*Id.*)  In response to those concerns, Plaintiff filed a Supplemental Memorandum in support of the Fee Motion.  (ECF No. 107.)

## II.  MOTION FOR FINAL APPROVAL OF SETTLEMENT

"Before approving the settlement of a shareholders' derivative action . . . , the district court must determine that there has been no fraud or collusion in arriving at the settlement agreement, and that it is fair, reasonable, and adequate."  *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *see also* 10 Federal Procedure, Lawyers Edition § 25:175 ("The general standard used to evaluate a settlement [in a derivative shareholder action] is that it must be fair, adequate, and reasonable, and not the result of fraud or collusion, and that it must be in the best interests of the parties.").

The Court finds that the settlement has been negotiated at arm's length and arrived at in good faith, there being no evidence of fraud or collusion between the parties.  *See Maher*, 714 F.2d at 456–57 (stating that a factor favoring approval of a derivative litigation settlement is that it "was the result of arm's-length negotiation, after extensive discovery and intelligent evaluation of the lawsuit by the parties and their capable counsel").  Counsel for both sides stated at the fairness hearing that negotiations were vigorous.  The attorneys involved in this matter are experienced in shareholder derivative litigation, and there is no evidence suggesting that they negotiated in anything other than good faith to reach the proposed settlement.

The Court also finds that the proposed settlement is reasonable, considering the claims at issue in this case.  Plaintiff's success on the merits was far from certain. Indeed, with Defendants' Motion to Dismiss still pending at the time of the settlement, Plaintiff's prospects for success in this action were certainly in question.  Had this litigation continued onto the merits of the claims asserted, Plaintiff would have faced a

significant hurdle in demonstrating that making a demand on the Board of Directors before initiating suit would have been futile, and as Plaintiff's counsel candidly admitted at the hearing, its claims were premised on a complex theory of corporations law, the success of which was unpredictable.  The Court finds that the significant uncertainty Plaintiff faced had it pursued this litigation weighs in favor of approving the settlement.  *See id.* at 455 ("Settlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable.  The courts, therefore, do not lightly reject such settlements.").

The Court also finds that the terms of the settlement are fair and adequate.  The fact that the settlement involves only corporate governance reforms (in addition to payment of attorneys' fees) does not weigh against approval of the settlement.  To the contrary, the corporate governance reforms provided for as part of the settlement are specifically and appropriately designed to prevent the recurrence of the alleged misconduct that formed the basis for this action.  Plaintiff's claims in this case challenged the Board's oversight of compliance with federal law—particularly with regard to the regulations governing Medicare billing and joint ventures—and the reforms are specifically directed at increasing this oversight.

As such, the Court finds that the settlement directly addresses the alleged cause of the harms suffered by shareholders, and is fair and adequate, even in the absence of a monetary recovery.  *See id.* at 466 ("[A] settlement may fairly, reasonably, and adequately serve the best interest of a corporation, on whose behalf the derivative action is brought, even though no direct monetary benefits are paid by the defendants to the corporation."); *Zimmerman v. Bell*, 800 F.2d 386, 391 (4th Cir. 1986) ("Influencing

6

the future conduct of management may serve the interests of the corporation as fully as a recovery for past misconduct, and a settlement may be accepted 'even though no direct monetary benefits are paid by the defendants to the corporation.'") (quoting *Maher*, 714 F.2d at 466); *Sved v. Chadwick*, 783 F. Supp. 2d 851, 864 (N.D. Tex. 2009) (approving derivative litigation settlement because it "offers tangible, long-term remedial measures that are specifically designed to avoid the alleged missteps in [the company's] past and protect shareholders as the company moves forward").

Finally, the fact that no objections to the settlement were filed by any shareholder weighs heavily in favor of approval of the derivative litigation settlement. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *3 (N.D. Cal. 2009) ("The reaction of the class to the proffered settlement . . . is perhaps the most significant factor to be weighed in considering its adequacy . . . ." (quotation marks and brackets omitted)); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990) ("Both the utter absence of objections and the nominal number of shareholders who have exercised their right to opt out of this litigation militate strongly in favor of approval of the settlement.").

Based on these considerations, the Court finds good cause to order final approval of the settlement entered into between the parties to this action.

### III.  MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD

At the fairness hearing, the Court expressed its concerns regarding the

reasonableness of the rates charged by counsel, and accordingly took under advisement the Fee Motion.  (ECF No. 106.)

Attorneys' fees are properly calculated by determining the "lodestar"—the number of hours reasonably expended multiplied by reasonable hourly rates—and then adjusting the lodestar figure, if appropriate, by considering one or more of the factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ("the *Johnson* factors").[1]  *See, e.g.*, *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1102–04 (10th Cir. 2010); *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355–56 (10th Cir. 1992).

In the Fee Motion, Plaintiff's counsel represents that the appropriate lodestar figure in this action is $2,053,814.50, based on 3,303.2 hours of attorney and staff time. (ECF No. 103 at 6.)  The Court has considered the complexity and procedural history of this case, and the number of hours expended by counsel relative thereto, and finds that the attorneys' billing practices were reasonable as to the number of hours accrued. However, at the hearing the Court noted concerns regarding the hourly rates for certain partners, which were as high as $825, and for paralegals, which were over $250, with one paralegal billing at the conscience-shocking rate of $325 per hour.  In the Court's experience, these rates are not commensurate with typical Denver area rates.  While

---

[1] The *Johnson* factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See id.* at 717–19.

Plaintiff's counsel argued at the hearing that New York area rates could be considered given the nationwide nature of shareholder derivative litigation, the Court disagrees, as the Tenth Circuit has established that the hourly rate should be "based upon the norm for comparable private firm lawyers in the area in which the court sits," regardless of where counsel happen to be located.  *Gottlieb v. Barry*, 43 F.3d 474, 485 n.8 (10th Cir. 1994) (internal quotation marks omitted).

In Plaintiff's Supplemental Memorandum, Plaintiff responded to the Court's concerns by stating:  "Plaintiff does not object to excluding all hours billed at the $825 rate from lodestar.  Likewise, Plaintiff does not object to halving the rates charged by counsel's paralegals."  (ECF No. 107 at 2 n.3.)  The Court finds that Plaintiff's proposed reduction in rates alleviates its concerns and reduces the rates to appropriate levels. Accordingly, the Court reduces the relevant rates, arriving at a new lodestar of $2,031,449.

After this adjustment to the lodestar, the Court must next determine whether the requested multiplier of 3.5 is reasonable in consideration of the *Johnson* factors.  *See Johnson*, 488 F.2d at 717–19.  The Court agrees that a multiplier is justified here, as Plaintiff has established that the significant risk it assumed by taking this case on contingency warrants compensation.  *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d. 1003, 1009 (D. Colo. 2014).  In addition to the contingent nature of counsel's fee and uncertain outcome, the scope and nature of the work required by Plaintiff's counsel both in preparation for and during litigation, and the complexity of this shareholder derivative action all weigh in favor of a significant attorneys' fees award.  *See Johnson*, 488 F.2d at 717–19.

9

Nevertheless, the requested multiplier of 3.5 gives the Court some pause. Plaintiff's Fee Motion cites numerous cases awarding fees with multipliers in the range of 3 to 5 (*see* ECF No. 103 at 10), but the Fee Motion does not explain how such a large multiplier is justified here, particularly given the already large size of the lodestar—over $2 million—to which it will be applied.  Furthermore, the Court notes that the Tenth Circuit has held that "our conscience is shocked by an award of a 3.16 multiplier that results in a fee equal to more than $900 per hour for every attorney, paralegal, and law clerk who worked on the case."  *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1447–48 (10th Cir. 1995).

In comparison to similar cases, the Court finds and holds that in this case, a multiplier of 3 will adequately compensate Plaintiffs' counsel for their extensive work on this complex case pursuant to the applicable *Johnson* factors, and is in line with the multipliers awarded in similar cases.  *See, e.g.*, *In re UnitedHealth Group Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1160 (D. Minn. 2009) (applying 2.75 multiplier to lodestar figure in shareholder derivative suit in which Plaintiff's counsel worked on contingency in the face of considerable risk and uncertainty); *see also Cohn v. Nelson*, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005) (collecting similar cases).  The Court concludes that the resulting fee of $6,094,347 constitutes fair compensation to Plaintiff's counsel for their work in this case.

The Court also finds that Plaintiff incurred $86,790.19 in expenses, and that this amount is reasonable under the circumstances.  Accordingly, Plaintiff's counsel shall be reimbursed for its expenses in their entirety.

Finally, as the Court ruled at the fairness hearing, the Court will grant the Motion for an incentive award for Lead Plaintiff, which seeks $10,000 for Haverhill.  When considering the appropriateness of an incentive award for representation, the Court must consider: (1) the actions the representative took to protect the interests of the corporation; (2) the degree to which the corporation has benefited from those actions; and (3) the amount of time and effort the representative expended in pursuing the litigation.  *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).  Here, the Court finds it reasonable to provide an incentive award, considering Plaintiff's extensive participation in the case and the hours it expended working with counsel and participating in formal and informal discovery both prior to and throughout these proceedings.  The Court also finds that the amount requested is reasonable, particularly relative to the overall valuation of the settlement in this case.

Therefore, the Court approves a sum total of $6,191,137.19 to be paid as attorneys' fees and expenses, out of which the incentive award shall be paid.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  Lead Plaintiff's Unopposed Motion for Final Approval of Amended Settlement (ECF No. 102) is GRANTED;

2.  The Amended Settlement Agreement (ECF No. 100-1) is fully and finally APPROVED;

3.  Plaintiff's Unopposed Motion for Award of Attorneys' Fees and Reimbursement of Expenses (ECF No. 103) is GRANTED IN PART as set forth herein; and

4.      The Court AWARDS Lead Plaintiff's counsel $6,191,137.19 in attorneys' fees

and expenses. The Clerk shall enter Final Judgment in accordance with this

Order.

Dated this 5th day of June, 2015.

BY THE COURT:

William J. Martinez
United States District Judge

12